Donald Lee ESPENSHADE, Plaintiff,

v.

The PENNSYLVANIA STATE UNIVER-
SITY, et al., Defendants.

Civ. A. No. 82–1001.

United States District Court,
M.D. Pennsylvania.

Jan. 28, 1983.

Donald Lee Espenshade, pro se.

R. Mark Faulkner, State College, Pa., for PSU, Oswald and Sheffler.

Marybeth A. Stanton, Allen C. Warshaw, Deputy Attys. Gen., Harrisburg, Pa., for Floyd and Com. of Pennsylvania.

John Feather, Jr., Lebanon, Pa., for Dauphin Co. Legal Services.

MEMORANDUM

CALDWELL, District Judge.

Before us is the motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed on behalf of defendants Commonwealth of Pennsylvania and Homer C. Floyd, Executive Director of the Pennsylvania Human Relations Commission. For the reasons discussed hereinafter the motion is granted.

I. Procedural History

Plaintiff, proceeding pro se, filed the current action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.[1] on August 18, 1982. Also named as defendants were Dauphin County Legal Service Association (DCLSA); Pennsylvania State University (PSU); John W. Oswald, University President; and Gaye W. Sheffler, formerly (or currently) on the office staff of sections within the Hershey Medical Center (PSU's medical school) located in Hershey, Pennsylvania. Following service, defendants Floyd and the Commonwealth filed their answer to the complaint on October 4, 1982, and defendants PSU, Oswald, and Sheffler answered on October 14, 1982. DCLSA filed a motion for a more definite statement, which motion was granted on November 24, 1982. Plaintiff complied with that order and provided the

1. Although the complaint also cites 42 U.S.C. § 2000(e) (referring to § 2000e, et seq.), that statute addresses discriminatory employer practices based upon "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2, matters clearly not contemplated in the present complaint. For a comprehensive discussion of the relationship between these discrimination statutes, see Laugesen v. Anaconda Company, 510 F.2d 307 (6th Cir.1975). The applicable statute, therefore, is the ADEA.

specific information DCLSA requested. DCLSA's answer was filed on December 10, 1982.

In our order of November 23, 1982, pursuant to discussions at a pretrial/discovery conference held the previous day, we granted the Commonwealth (and implicitly Floyd) leave to file a motion for judgment on the pleadings prior to expiration of the discovery period. The motion and supporting brief were filed on December 17, 1982, and plaintiff has filed a timely opposing brief.

## II. Factual Background

The main issue raised in plaintiff's complaint centers around his employment at PSU's "Capitol Campus," located in Middletown, Pennsylvania, where plaintiff had a part-time, fixed-term faculty appointment for the 1980 winter term. Plaintiff did not receive employment offers for the spring or fall terms of 1980 but did teach during the 1981 winter term. Plaintiff had been interviewed for a full time, one year appointment for the 1980–81 school year but was not the applicant selected. PSU has denied plaintiff's allegations that PSU indicated that plaintiff's age (forty-six) was influential in the hiring decision. PSU has also denied plaintiff's contention that a "much younger" man was hired. *See* complaint, ¶ 30, and PSU's answer.

Plaintiff has also alleged that part of the reason for his problem is the retention and distribution of sham information in his university records dating to the late 1960's and/or early 1970's when plaintiff was a medical student at Hershey. This dispute seems to concern failing grades and is, of course, not within the ambit of the ADEA. At any rate, plaintiff filed complaints with the Pennsylvania Human Relations Commission (PHRC) in 1980 and 1981, and it appears that at least two of these complaints were assigned Equal Employment Opportunity Commission (EEOC) charge numbers. It is alleged that the PHRC complaints were all dismissed, after which the present action was filed.

Plaintiff's original complaint and more definite statement contain allegations against DCLSA which, even if plaintiff could prove them, appear to be barred by the applicable statute of limitations. No contacts are alleged to have occurred with DCLSA after early 1973. *See* ¶s 92 and 93 of plaintiff's more definite statement and DCLSA's answer to ¶ 93. Moreover, plaintiff's claim against DCLSA is unrelated to the ADEA claim and is actually a negligence or legal malpractice suit, arising out of DCLSA's representation of plaintiff during 1972 and 1973, when he allegedly had difficulties with the medical college in Hershey. At the present time, however, we are reserving final decision on the statute of limitations issue.

## III. The Claim Against Floyd

Plaintiff's claims against defendant Floyd relate to his position as Executive Director of the PHRC. We observe initially that very little of plaintiff's complaint refers expressly or implicitly to this defendant, but plaintiff appears to complain that the PHRC complaints he filed in 1980 and 1981 were dismissed without face to face hearings being held at any time. Plaintiff cites no authority for his position, but we note that Section 9 of the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 959, provides that if the PHRC investigates and determines that "no probable cause exists for crediting the allegations of the complaint," the PHRC shall timely (within ten days) notify the complainant who then has ten days in which to file a written request for a preliminary hearing. Although the statute fails to indicate that not only a preliminary hearing request but also a request for reconsideration of the dismissal must be filed, the PHRC has adopted regulations to that effect at subchapter F, 16 Pa.Code § 42.62. A case considering these regulations, *Carney v. Pennsylvania Human Relations Commission,* 45 Pa. Commonwealth 10, 404 A.2d 760 (1979) held that a preliminary hearing was not required whenever requested. The court, however, concluded that prior to a final

determination a full hearing with the opportunity to present evidence and for cross examination was required. Moreover, a complete record was to be made of this hearing and the testimony transcribed.

Plaintiff's present arguments seem to be based on this case. However, he ignores the fact that section 10 of the PHRA, 43 P.S. § 960, was amended and deleted the portion of that section which led the *Carney* court to conclude that a hearing was necessary prior to a "no probable cause" determination. Plaintiff's cause of action arose after the amendment.

█ Under the circumstances, plaintiff's claim against Floyd as Executive Director of the PHRC appears to be based solely on the failure to provide a hearing. As we have indicated, had plaintiff requested one, that request could be denied. Moreover, as section 12, 43 P.S. § 962(c), provides, claimants who follow the procedures set forth in the PHRA are not precluded from instituting action in the state courts of common pleas.

We have carefully examined the case of *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), which dealt with personal immunity of certain federal officials. The Court concluded that these officials were absolutely immune for their performance of discretionary acts within the scope of their authority but, like state officials, did not enjoy this high degree of immunity for their constitutional transgressions. No constitutional affront is at issue in the present matter and we find the *Butz* Court's rationale helpful, particularly in light of its discussion of the immunity of state officials sued under 42 U.S.C. § 1983.

It is uncontroverted that Floyd in the present matter was performing a discretionary duty reserved to him pursuant to 16 Pa.Code § 42.61(b), which provides,

> A staff finding [of no probable cause] will be reported to the Executive Director who will close the complaint, otherwise close the case, or direct the matter to proceed *as he deems appropriate.* The Executive Director is the only person so authorized.

(emphasis supplied). Therefore, in accordance with our foregoing discussion, judgment on the pleadings will be granted in favor of this defendant.

## IV. The Claim Against the Commonwealth

Upon consideration of the arguments of plaintiff and the Commonwealth and review of the applicable law, we have also concluded that judgment on the pleadings should be awarded to the Commonwealth. As the Commonwealth's brief points out, plaintiff's age discrimination claim is against PSU, and the institution's Board of Trustees makes the employment decisions of the University. *See* 24 P.S. § 2542. We recognize that sufficient nexus ("state action") between PSU and the Commonwealth has been found to permit an action against PSU under 42 U.S.C. § 1983 and the fourteenth amendment. *See, e.g., Klain v. Pennsylvania State University*, 434 F.Supp. 571 (M.D.Pa.1977), *aff'd.* 577 F.2d 726 (3d Cir.1978), wherein the institution's mandatory retirement policy was at issue. However, we note that in the *Klain* case, the University as promulgator of the allegedly offensive policy rather than the Commonwealth was the defendant.

Moreover, we have reviewed several EEOC cases under the ADEA brought in the federal courts in Pennsylvania and other jurisdictions. In *Equal Employment Opportunity Commission v. County of Allegheny*, 519 F.Supp. 1328 (W.D.Pa.1981), an action brought to question a hiring policy that refused to consider police force applicants over the age of thirty-five (35), the court had permitted the plaintiff to add the governor, attorney general, and Commonwealth as defendants. On the merits the court concluded that the county must be enjoined from continuing its policy and likewise that the Commonwealth must be enjoined from enforcing 16 P.S. §§ 4510 and 4522, the provisions of the Second Class County Code mandating such an age restriction.

The court apparently did not consider the tenth amendment issue grounded in *Nation-*

al League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), wherein the United States Supreme Court concluded that the federal wage and overtime requirements embodied in the Fair Labor Standards Act were inapplicable to the states because they would constitute an impermissible intrusion into traditionally recognized areas of state sovereignty. This argument, however, was considered and rejected in Equal Employment Opportunity Commission v. County of Los Angeles, 526 F.Supp. 1135 (N.D.Calif.1981), another police hiring case that found a similar age limit in violation of the ADEA and cited the Allegheny case, supra, with approval.

Whether a state may be sued for ADEA violations or is excluded on tenth amendment grounds has recently been argued before the Supreme Court in Equal Employment Opportunity Commission v. Wyoming, 454 U.S. 1140, 102 S.Ct. 996, 71 L.Ed.2d 291 (1982). The district court, 514 F.Supp. 595 (D.Wyo.1981), considering mandatory retirement provisions at age fifty-five (55) for state game wardens, concluded that "[i]t is sheer ostrichism to say the National League of Cities merely struck down the wage-hour provisions of FLSA without affecting ADEA," id. at 598, and accordingly dismissed the complaint.

The uncertainty regarding whether the tenth amendment precludes application of the ADEA to the states, however, does not warrant our awaiting a definitive pronouncement on this issue in the present matter. In the case now before us plaintiff has shown no role by the state in the alleged age discrimination, and we agree with the Commonwealth that plaintiff appears to rely on vicarious liability. Therefore, judgment on the pleadings is granted in favor of the Commonwealth.

## V. Conclusion

Plaintiff has attempted to counter the current motion without reference to any legal authority, either statutory or judicial. His brief is replete with personal opinion and legally unsubstantiated conclusions. Moreover, he points out that the more definite statement he filed has not been answered by any defendants other than DCLSA. However, plaintiff does not realize that only DCLSA was required to answer since the averments were against DCLSA and since plaintiff was ordered to file the more definite statement as a result of our granting DCLSA's motion therefor.

We recognize plaintiff's problems in proceeding pro se and we have accorded him the deference warranted to individuals in his position. We do, however, again remind plaintiff that retaining counsel would be to his benefit. We note that plaintiff has filed his settlement demands as we directed in our order of November 23, 1982, but these demands are unrealistic. Furthermore, plaintiff has recently filed objections to the interrogatories and request for production of documents filed by PSU, Oswald and Sheffler. Though we are not yet faced with a motion to compel discovery pursuant to Federal Rule of Civil Procedure 37, we do advise plaintiff that discovery is an important pretrial process and that the modern discovery rules were promulgated with the purpose of making information accessible and avoiding "trial by ambush" tactics. Plaintiff has, of course, been free to pursue his own discovery within the perimeters of the sixty (60) day deadline set in our order of November 23. All parties are reminded that motions must be filed within thirty (30) days of the expiration of that deadline or by February 23, 1983. An accompanying order is filed in accordance with the foregoing discussion.

### ORDER

AND NOW, this 28th day of January, 1983, IT IS ORDERED THAT:

1. The motion for judgment on the pleadings filed on behalf of defendants Commonwealth of Pennsylvania and Homer C. Floyd is granted.

2. The Clerk of Court is directed to enter judgment in favor of the aforesaid defendants.

3. Plaintiff and the remaining defendants shall file any further motions in

this matter on or before February 23, 1983.